## Bell v. The State.

1. Where the indictment covered not only the keeping of a gaming-house, but knowingly permitting persons to come together and play for money at prohibited games in a house or room occupied by the accused, and where the evidence disclosed a single instance of gaming, but no more than one, a conviction could be had whether this constituted the house a gaming-house or not. Consequently, that question is immaterial, and it was not error for the court to decline a request to decide it in charging the jury.

2. Under the penal code of Georgia (Code, §4300), a wife is not excused by the mere presence of the husband for any criminal act done voluntarily by her. In order for her to stand excused, it must appear that "violent threats, command and coercion were used" by him.

3. When husband and wife reside together he is the head of the house, whether it be owned by or be rented to the one or the other. When both are present, it is his duty, not hers, to prevent unlawful gaming therein, and in order to hold her liable, criminally, for permitting such gaming, it must appear affirmatively that she was active in the granting of permission, not merely that she was passive in the matter and took no measures to hinder or prevent the game.

4. While the evidence in the record seems insufficient to establish satisfactorily that the accused was a married woman, yet as the court below appears to have so treated her in charging the jury, and the counsel for the State in the argument here having acquiesced in that view, this court is not called upon to decide upon the effect of the evidence on that question.

April 10, 1893.

Accusation of keeping gaming-house. Before Judge Willis. City court of Columbus. January term, 1893.

Hattie Bell was convicted of keeping a gaming-house. She excepted to the refusal of a new trial, the grounds therefor being, that the verdict is contrary to law and evidence; and that the court erred in refusing to instruct the jury, that if they believe from the evidence that defendant only allowed persons to come together in her house and play and bet for money at cards one time, "this would not be to keep, have, use and maintain a gaming-house, within the meaning of the statutes of

v 92-4

this State"; and that if they believed from the evidence that defendant was a married woman, and her husband was present at the time the playing and betting is said to have been done, " then the law presumes that she acted under his coercion, and the crime, if any, will be attributed to him and not to her." But the court charged that if defendant rented the house and was in control of it, she would be just as guilty as if she were a single woman, if the jury believed from the testimony that she kept a gaming-house.

The evidence was as follows : A policeman testified, that on the night of the day charged in the indictment, he and other officers went to defendant's house and heard some one on the inside say, " If you want to play, ante up twelve and a half cents." They demanded admittance and found several persons in the back room of the house, two or three of them sitting around a table on which was a lamp and a pack of cards scattered about. Saw no betting or card-playing, and no money on the table or elsewhere in the house. One Bingham testified, that he was at the house on the same night before the policemen raided it; that there was gambling going on there that night; that defendant, witness and two others were playing a game of cards for money; and that he never saw gaming going on there but that one time. For the defendant a witness testified that he was present at the time named, and that there were some cards on the table, but there had been no betting or gambling going on. He heard that defendant, Hattie Bell, and Harry Dillard were married, and knew they were at the time living together as man and wife. Harry Dillard was present when the house was raided. There was a party given there that night; witness got there about half past one o'clock, was there all the time Bingham was. Two other witnesses testified substantially the same as just stated, except that one of them got to the

house early in the night, and the other was drunk. In rebuttal, a witness for the State testified that his firm rented this house to the defendant. She paid the rent, and they did not know Harry Dillard in the transaction.

BLANDFORD & GRIMES and H. C. CAMERON, for plaintiff in error.

T. Y. CRAWFORD, solicitor, and W. A. TIGNER, *contra*.

BLECKLEY, Chief Justice.

1. While a single act or instance of gaming in a house or room will not constitute the place a gaming-house or room, yet such an act together with all the attendant circumstances and surrounding indications may be sufficient evidence to show that the house or room is really one of that character. In this case the indictment was as broad as section 4538 of the code. It charged not only that the accused kept a gaming-house and room, but that she knowingly permitted persons to come together and play and bet for money at the enumerated games and other games played with cards, in a house and room occupied by her. On such an indictment the question embraced in the request to charge as to a single instance was immaterial, and for this reason the court was not bound to comply with the request.

2. Section 4300 of the code is in these words: "A *feme covert*, or married woman, acting under the threats, command or coercion of her husband, shall not be found guilty of any crime or misdemeanor not punishable by death or perpetual imprisonment; and, with this exception, the husband shall be prosecuted as principal, and, if convicted, shall receive the punishment which would otherwise have been inflicted on the wife, if she had been found guilty; provided, it appears, from all the facts and circumstances of the case, that violent threats, command and coercion were used." Whatever may have been the common law on the subject, it is evident from

this language that, as to any offence, however small, in order for the wife to stand excused under the code, on the ground of the presence of her husband, it must appear that she was in fact coerced, or that he used violent threats, command or some equivalent means of coercion calculated to overpower her will and render her a passive instrument rather than a voluntary agent of crime.

3. If the accused, Hattie Bell, and Harry Dillard were husband and wife and resided together in the house where the gaming took place, no matter which of them owned or had rented the house, he was the head of the family. It appeared that both were present when the gaming was being carried on. If so, it was his duty, not hers, to prevent it. To hold her liable criminally for permitting it while he was present, it should appear affirmatively that she was active in granting permission. If she was merely passive in the matter, although she took no measures to hinder or prevent the game, she could not be convicted. The evidence discloses nothing but passive acquiescence on her part. By whose means the gamesters were brought together, or by whose permission they engaged in and carried on the game, does not appear.

4. The only evidence of marriage was that of three witnesses who testified that they had heard that Hattie Bell and Harry Dillard were married, and that they knew they were living together at this house as man and wife. We should be inclined to doubt whether this evidence would be sufficient to establish the marriage, but in charging the jury the court appears to have treated the accused as a married woman, and in the argument here the counsel for the State acquiesced in that view. Under these circumstances we do not feel it incumbent upon us to decide upon the effect of the evidence as to the proof of marriage. Taking it for granted that Harry Dillard was the husband of the accused, the verdict was

without sufficient evidence to justify it, and the court erred in not granting a new trial. *Judgment reversed.*