STATE v. J. W. AND M. L. SEAHORN.

(Filed 6 May, 1914.)

1. **Intoxicating Liquors — Trials—Evidence—Declarations—Conversations.**

Upon a trial of the defendants, husband and wife, for the unlawful sale of intoxicating liquors, a witness for the State testified that he was a private detective, and went with one M. to the home of the defendants, with evidence tending to show that he purchased whiskey from the wife in the presence of her husband, and, representing himself as a whiskey salesman, obtained orders from each of the defendants. *Held,* testimony of this witness, that in being introduced to the defendant by M. the latter said the witness could take orders from them, is not hearsay, but competent as a circumstance tending to show that the defendants were engaged in the liquor traffic.

2. **Appeal and Error—Assignments of Error.**

An assignment for error made to the charge of the trial judge should set out briefly the parts of the charge excepted to; and in this case it is held to be insufficient that the charge is set out and the assignments refer to such portions as appear between certain marks of identification.

STATE *v.* SEAHORN.

3. **Intoxicating Liquors—Husband and Wife—Trials—Instructions—Presumptions—Appeal and Error—Harmless Error.**

> Upon this trial for the unlawful sale of intoxicating liquors, there was evidence tending to show that the defendants, husband and wife, kept such liquors for sale at their home, and that the *feme* defendant made the sale to the State's witness, in the presence of her husband, she testifying that she had not sold any intoxicants, and making no claim, therefore, that she was unlawfully acting under the restraint of her husband. *Held,* the judge erroneously instructed the jury as to their verdict upon their finding as to whether the wife or husband would be guilty upon the evidence of the husband's acquiescence or approval; but it is further held as harmless error, as the jury fully understood that her conviction rested entirely upon the question of whether she made the unlawful sale, and if so, did she act willingly and of her own accord.

CLARK, C. J., concurring.

APPEAL by defendant from *Long, J.,* at October Term, 1913, of CABARRUS.

Indictment for selling liquor. The defendants were both convicted, and appeal.

*Attorney-General Bickett and Assistant Attorney-General Calvert for the State.*

*H. S. Williams and L. T. Hartsell for defendants.*

BROWN, J. The defendants are husband and wife. Both were indicted and convicted of the crime of selling intoxicating liquor.

The evidence on the part of the State tends to show that the defendants kept a house of questionable repute; that the prosecuting witness, Lawrence, in company with another, visited the house, and that the *feme* defendant, in the presence of her husband, sold Lawrence two pints of whiskey; that at the same time the defendants gave Lawrence, who was posing as a whiskey drummer, two orders, one for 24 pints of whiskey to be shipped to Landis, a station near Concord, this order being signed by the wife, and one for one barrel of Budweiser to be shipped to Concord, this order being signed by the husband.

The evidence on the part of the defendant is that no liquor was sold; that Lawrence himself furnished the liquor which, it is admitted, was drunk by the parties present.

There are two assignments of error:

1. For admitting testimony of Joe Lawrence as to what Mehaffey said, which is the subject of the first exception.

2. That part of his Honor's charge to the jury between (A) and (B), which is the subject of the second exception, and that part of his Honor's charge between (C) and (D), which is the subject of the third exception.

Joe Lawrence testified as follows:

"I was employed by the city of Concord as a detective, July, 1913, and went out to meet the defendants with Mr. Mehaffey. On 24 July I was in the Greek Candy Kitchen in Concord and came out and saw Mr. Mehaffey driving along the street in a buggy by himself. When we got out there, I found Mrs. Seahorn and two ladies. We sat down in the kitchen, and Mr. Mehaffey said to them, 'Shake hands with Mr. Lawrence, a whiskey drummer from Richmond.' Mr. Mehaffey said I could take some orders."

The objection is made upon the ground that witness told the defendants what Mehaffey said. This is not hearsay. It was a conversation with both defendants. It sheds light upon the real issue, and is a circumstance tending to show that defendants were engaged in the liquor traffic.

The second assignment challenges the correctness of the following portions of the judge's charge to the jury:

"(A) So, gentlemen, when you come to examine this evidence to ascertain whether or not the defendants' contentions are true, it is left to you. I cannot tell you what to find. If you find that there was a sale of liquor made there to Lawrence, and that the wife got the liquor and delivered it to Lawrence in the hearing and with the approval and acquiescence of the husband, in the husband's house, you would be justified in finding the husband guilty, although he did not touch the liquor or the money. In other words, if you find that the wife was acting as the agent of her husband, that she was simply dealing and getting the liquor out of the trunk and handing it over to this man, and

then collecting the money for this man, as his agent, or coöperating with him, aiding and abetting him in making sale in that way, he would be just as guilty as she is.

"Ordinarily, what the wife does in the presence of her husband is presumed to be done with his consent, to the extent that the wife is often excused for acts committed by her in his presence. In order that this may be so, however, it must expressly appear that it was with his consent, or made to appear from his acts or words. (B)

"(C) One of the defendant's counsel asked me to instruct you that if she made sales in his presence and under circumstances that she was acting under his coercion, and it was with his consent and approval, that she should be acquitted. That is substantially the instruction as I understood counsel to make. I don't wish to give you that instruction in this case, because she came upon the stand and made a statement, herself, as to her conduct and the circumstances and the things that happened on the premises. I leave it to you to pass upon her guilt or innocence by saying to you that if you find that she was acting voluntarily in the sale of liquor on this occasion, actually making the sales, or aiding and abetting and assisting her husband, she was doing this willfully and deliberately, you should find her guilty.

"If you find, however, upon a review of the testimony, that she was acting under the constraint of her husband, and that he was exercising such power over her as to cause her to make sales of liquor, in his presence, so that it was not her own voluntary act, but she was the agent of her husband, then, under the circumstances, you should acquit the wife and convict the husband.

"So that I will leave the case to you to pass upon all this testimony and say whether or not, under all the evidence, you are satisfied in the manner in which I have instructed you the husband is guilty or not guilty, or whether or not you will find the wife guilty or not guilty. (D)"

This second assignment is not in due form. It should have set out briefly the parts of the charge excepted to. As the point is not made by the State, we waive it without creating a precedent.

The charge is not, strictly speaking, a compliance with *S. v. Williams,* 65 N. C., 398, and *S. v. Norvell,* 156 N. C., 652. But we think that it may be considered, if not a substantial compliance, at least harmless error.

The jury evidently understood that they should not convict the *feme* defendant unless they were fully satisfied that the wife was acting voluntarily and free from any constraint upon the part of her husband.

Then, again, the prayer itself was not technically correct. The defendants did not ask for any instruction about a presumption, but asked the judge to charge the jury that if the wife made the sale in the presence of the husband, and under circumstances that she was acting under his coercion, and with his consent and approval, that she should be acquitted.

It was entirely proper to decline to give this instruction, and if any error was committed, it was in the failure of the judge to charge that the law presumed that the wife acted under the compulsion of the husband, and the burden was upon the State to rebut this presumption.

This presumption is not a statutory presumption, but is a rule of evidence, established by the courts for the protection of married women at a time when they could not testify for themselves.

Now the *feme* defendant can testify for herself, and in this case she did, and testified that she sold no liquor at all. She did not claim to have acted under the constraint of her husband. It would appear that if any constraining was to be done, she was the more likely to do it than the husband. We doubt, in view of all the circumstances, and her own evidence, if she was entitled to this artificial presumption, but if so, she received the benefit of it.

Some courts hold against such presumption, and think it out of place in this enlightened age. *S. v. Hendricks,* 32 Kans., 559; and in Arkansas, Georgia, and Nebraska it has been abolished by statute. *S. v. Bell,* 92 Ga., 49; *Smith v. Myers,* 54 Neb., 1.

We think, upon a review of the whole case, that the defendants have had a fair and impartial trial.

No error.

STATE *v.* SEAHORN.

CLARK, C. J., concurring: If the wife acted voluntarily, she ought to be held liable, whether her husband was present or not. If she acted under his compulsion, she ought to be exempt from punishment, not because of the marital relation, but like any one else acting under compulsion. At common law there was a presumption that when a crime was committed by the wife in the presence of her husband, she acted under compulsion; but that presumption does not comport with Twentieth Century conditions. The contention that a wife has no more intelligence or responsibility than a child is now out of date. No one believes it.

In *S. v. Rhodes,* 61 N. C., 453, the Court affirmed the ruling below upon a special verdict, that a husband was not guilty where he whipped his wife without provocation "with a switch not larger than his thumb," and in *S. v. Black,* 60 N. C., 263, *Pearson, C. J.,* held that a husband could not be convicted of a battery on his wife unless he inflicted permanent injury or had used such excessive violence as to indicate malignity, saying that "the law permits him to use towards his wife such a degree of force as is necessary to control an unruly temper and make her behave herself," adding that if such matters were taken notice of by the courts it would "encourage insubordination." In that state of the law, it was proper to hold that any crime committed by the wife in the presence of the husband was presumed to have been committed under his compulsion. That was just and proper when the husband could thrash her at will.

But in *S. v. Oliver,* 70 N. C., 61, in 1874 (just forty years ago), that doctrine was overruled, *Settle, J.,* saying: "The courts have advanced from that barbarism." This change in the law was made without any statute, as indeed the overruled decision had been made. When, however, the Court took this step forward and relieved the wife from this fear, it was but proper to change the ruling which had been based upon it, also without any statute, that if the wife committed a crime in the presence of the husband there was a presumption that it was under his compulsion. In most States, accordingly, and probably in all now, such presumption is denied and held out of place. *S. v. Bell,* 92 Ga., 49; *Smith v. Meyers,* 54 Neb., 1; *S. v. Hendricks,* 32 Kans., 551.

The privy examination, required of a married woman when joining her husband in a conveyance, was based upon the same medieval idea of the right of the husband to control his wife with the lash, if he thought proper.  Accordingly it has been abolished in England long since and in all the States of this Union except in North Carolina and five or six others.  The requirement for a privy examination has for many years been abolished in all the States that adjoin us—Virginia, Tennessee, Georgia, and South Carolina.  As, however, it is statutory, that can only be repealed by statute, as should have long since been done here, considering the reason for its origin; but the presumption of compulsion of the husband as to crimes committed by the wife in the presence of her husband having been created solely by judicial decision, should be set aside in the same mode, since we have "advanced from the barbarism" upon which it was based.

It was as to this very presumption of the wife being under the direction of the husband that in Oliver Twist (ch. 51) Bumble, the Beadle, said : "If the law presumes that, the law is a Ass—a idiot."