STATE OF NORTH CAROLINA v. ANTHONY LAMAR DAVIS

No. 9217SC217

(Filed 18 May 1993)

1. **Homicide § 73 (NCI4th)— solicitation to commit murder— future phone call required before murder—sufficiency of evidence**

    Evidence was sufficient to be submitted to the jury in a prosecution for solicitation to commit murder of a witness where it tended to show that defendant enticed, counseled

STATE v. DAVIS

[110 N.C. App. 272 (1993)]

and induced an undercover SBI agent to kill a named person; by discussing such specifics as the manner of the killing and the disposal of the body and by providing a "downpayment" of $50, defendant showed that he had more than just a casual interest in having the third person killed; and the fact that defendant placed a future condition on the solicitation, a phone call, did nothing to negate his specific intent. N.C.G.S. § 14-18.1(b).

**Am Jur 2d, Homicide §§ 564, 567.**

2. **Evidence and Witnesses § 3172 (NCI4th) — tape and transcript of conversation with SBI agent — admissibility for corroboration**

In a prosecution for solicitation to commit murder the trial court did not err in admitting a tape and a complete transcript of the conversation between defendant and an undercover SBI agent wherein defendant engaged the services of the SBI agent to commit the murder, since the tape and transcript substantially corroborated the agent's trial testimony. Moreover, any derogatory remarks on the tape with regard to African Americans did not prejudice defendant, as he excused all the African Americans from the jury himself, and any evidence of prior acts of bad character referred to on the tape were not prejudicial to defendant.

**Am Jur 2d, Evidence § 436.**

**Admissibility of sound recordings in evidence. 58 ALR2d 1024.**

3. **Evidence and Witnesses § 179 (NCI4th) — solicitation to commit murder — testimony by intended victim — relevancy to show motive**

In a prosecution of defendant for solicitation to commit murder of a witness, the trial court did not err in allowing the intended victim to testify that she had been a victim of a crime committed by defendant and that she was prepared to testify against defendant if called upon to do so, since such testimony was highly relevant in that it presented to the jury a motive for defendant's solicitation.

**Am Jur 2d, Evidence §§ 251 et seq.; Homicide §§ 280, 564, 567.**

Appeal by defendant from judgment and commitment entered 11 July 1991 by Judge William Z. Wood, Jr. in Rockingham County Superior Court. Heard in the Court of Appeals 29 March 1993.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Grayson G. Kelley, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Janine M. Crawley, for defendant.*

LEWIS, Judge.

Defendant was convicted of solicitation to commit murder and has appealed his conviction to this Court. The evidence presented below tended to show that on 7 December 1990 SBI Agent Michael Wilson, posing as a motorcycle gang member, met with defendant at a tatoo parlor in Eden. Agent Wilson's meeting with defendant had been arranged by another SBI agent upon learning that defendant was interested in soliciting the murder of Tammy Dunnington ("Dunnington"), a witness against defendant in another matter. Prior to entering the tatoo parlor, Agent Wilson had been wired so that his conversation with defendant could be recorded.

During Agent Wilson's conversation with defendant many of the particulars of the proposed killing were discussed including where the murder would take place, how it would be done, and even where to dispose of the body. To make sure that Agent Wilson had the right victim, defendant asked Agent Wilson if he had a picture of Dunnington. Agent Wilson produced a picture of Dunnington, thereby confirming her identity as the intended victim. Agent Wilson testified that he felt an agreement was reached with the defendant where he was to kill Dunnington when the defendant's criminal case was set for trial. Throughout the conversation, Agent Wilson requested a retainer fee as a show of good faith and defendant agreed to advance $50 of the $2000 that Agent Wilson was to be paid. At the conclusion of the conversation, defendant went behind a partition in the tatoo parlor and spoke with another individual. Defendant then left the tatoo parlor and the other individual came from behind the partition and gave Agent Wilson a $50 bill.

At the close of all the evidence defendant made a motion to dismiss based on the sufficiency of the evidence. Defendant's motion was denied to which the defendant has assigned error.

The standard by which a motion to dismiss is reviewed on appeal is whether there was substantial evidence of each element of the crime charged. *State v. Bates*, 309 N.C. 528, 308 S.E.2d 258 (1983). In making this determination the evidence is considered in the light most favorable to the State, with the State receiving the benefit of every reasonable inference that can be drawn from the evidence. *State v. Cooley*, 47 N.C. App. 376, 268 S.E.2d 87, *disc. rev. denied and appeal dismissed*, 301 N.C. 96, 273 S.E.2d 442 (1980).

[1] In the present case defendant was indicted for solicitation to commit murder of a witness in violation of both N.C.G.S. § 14-18.1(b) and the common law. The specific provision defendant has been charged under was first codified in 1989 and provides:

> Conspiracy to commit murder or solicitation to commit murder of a . . . witness or former witness against the defendant while engaged in the performance of his official duties or because of the exercise of his official duties, is a Class D felony.

N.C.G.S. § 14-18.1(b) (Cum. Supp. 1992). The essence of defendant's argument is that solicitation is a specific intent crime and that he lacked the specific intent because he had not yet ordered Agent Wilson to proceed with the murder since it was not clear whether Dunnington would testify against him. We agree with defendant that solicitation is a specific intent crime but we disagree that he lacked the requisite specific intent. We are guided by *State v. Furr*, 292 N.C. 711, 235 S.E.2d 193, *cert. denied*, 434 U.S. 924, 54 L. Ed. 2d 281 (1977), regarding the crime of solicitation. Therein, the Supreme Court stated that "[t]he gravamen of the offense of soliciting lies in counseling, enticing or inducing another to commit a crime." *Id.* at 720, 235 S.E.2d at 199 (citation omitted). When viewing the evidence in the light most favorable to the State, we find more than ample evidence that defendant enticed, counseled and induced Agent Wilson to kill Dunnington. By discussing such specifics as the manner of the killing, the disposal of the body and the exchange of $50, defendant showed that he had more than just a casual interest in having Dunnington killed.

The fact that defendant placed a future condition on the solicitation does nothing to negate his specific intent. As one commentator has stated "because the essence of the crime of solicitation is 'asking a person to commit a crime,' it 'requires neither a direction to proceed nor the fulfillment of any conditions.' " LaFave & Scott,

*Substantive Criminal Law*, Vol. 2 § 6.1 (4th ed. 1993 Supp.), citing *Gardner v. State*, 396 A.2d 303, *aff'd*, 408 A.2d 1317 (Md. 1979). It is clear that at the conclusion of the meeting with Agent Wilson, defendant had the present specific intent that Dunnington would be killed upon the placement of a future phone call. If defendants can place conditions on their solicitation so as to negate the element of specific intent then the crime of solicitation would become a virtual nullity. We do not believe the legislature intended such a result when it codified the crime of solicitation in 1989. We find no merit to defendant's first assignment of error.

[2] In his second assignment of error defendant claims the trial court erred in admitting a tape and a complete transcript of the conversation between defendant and Agent Wilson for the purpose of corroborating Agent Wilson's trial testimony. During the trial defendant repeatedly objected to the introduction of the tape and transcript and made several requests to have the transcript sanitized. All of defendant's objections were overruled. Although we agree with defendant that the trial court should have redacted several irrelevant comments from the transcript, we do not believe that the trial court's refusal to do so amounted to prejudicial error.

It is well established that prior consistent statements of a witness are admissible to strengthen the witness' credibility. *State v. Warren*, 289 N.C. 551, 223 S.E.2d 317 (1976). As long as the testimony offered as corroboration is generally consistent with the witness' testimony then slight variations are permissible. *Id.* To be admissible as corroborative testimony, a witness' prior statement is not limited to the specific facts brought out in the witness' present testimony, so long as the prior statement tends to add weight and credibility to the witness' present testimony. *State v. Ramey*, 318 N.C. 457, 349 S.E.2d 566 (1986).

Having reviewed the transcript, we have no doubt that it was corroborative of Agent Wilson's in court testimony. We admit that some new testimony was introduced through the transcript, but we do not believe it went so far beyond Agent Wilson's trial testimony as to amount to reversible error. The majority of the transcript was corroborative and helpful to the jury's understanding of Agent Wilson's testimony. Nevertheless, we have examined the transcript to determine whether any of the new evidence was of such a nature as to have a prejudicial effect on defendant. Defendant points to four pieces of new information introduced through

the transcript which he claims were likely to prejudice him in the eyes of the jury. We feel that only two of these are worth addressing.

Defendant claims that the transcript contained many derogatory remarks about African Americans which were likely to prejudice the jury against him. Having reviewed the transcript we agree that defendant's comments were potentially prejudicial. However defendant failed to state that there were no African Americans on the jury because he had excused them all. Given that defendant excused all the African Americans himself, we hardly see how defendant's comments could have resulted in any prejudice to him.

Defendant also claims that the transcript refers to several acts of bad character that are inadmissible under Rule 404(b). We disagree with this assertion because the majority of the bad acts referred to in the transcript amounted to nonspecific bravado on the part of defendant as to his prior exploits in a barroom fight. In addition, several of defendant's comments were statements of future combative behavior and can hardly be considered prior bad acts. Given that Rule 404(b) is a general rule of inclusion subject to one exception, when the only probative value of the prior acts is to show that defendant had a propensity to act in conformity therewith, *State v. Agee*, 326 N.C. 542, 391 S.E.2d 171 (1990), we can hardly say that the trial court committed error. The examples of any prior bad acts occurred during defendant's conversation with Agent Wilson. As such these comments were necessary for a complete understanding of the chain of circumstances leading to defendant's arrest. *See id.* However, even if defendant's comments did amount to impermissible evidence of prior bad acts, we would not be compelled to grant defendant a new trial. In order to obtain a new trial it is incumbent upon defendant to show not only that error occurred but that the error was so prejudicial that it is likely a different result would have been reached. *State v. Loren*, 302 N.C. 607, 276 S.E.2d 365 (1981). The burden of proof on this issue is upon defendant. *See* N.C.G.S. § 15A-1443(a) (1988). On the facts of this case we hold that defendant has failed to establish that a different result would have been reached if the alleged "bad acts" had been redacted from the transcript. Defendant's second assignment of error is overruled.

[3] Finally defendant claims the trial court erred in allowing Dunnington to testify concerning the charges pending against de-

fendant. The basis of defendant's claim is that the testimony was irrelevant and even if relevant, it was outweighed by its prejudicial effect. We find the intended victim's testimony to be highly relevant because it presented to the jury a motive for defendant's solicitation. At no point did Dunnington give any specifics about the sexual charges. Instead she testified generally that she had been a victim of a crime committed by defendant and that she was prepared to testify against defendant if called upon to do so. We do not believe the probative value of this evidence to be outweighed by its prejudicial effect. We hold that defendant received a fair trial free from prejudicial error.

No error.

Chief Judge ARNOLD and Judge COZORT concur.