STATE OF NORTH CAROLINA v. CRYSTAL PENNINGTON OWEN

No. COA98-413

(Filed 15 June 1999)

**1. Criminal Law— defenses—spousal coercion—valid**

The defense of spousal coercion, though created at a time when women could not testify for themselves and now outdated, has not been abolished by the North Carolina Supreme Court and remains a valid defense.

**2. Jury— defenses—spousal coercion—prospective jurors—instruction not given—no prejudice**

There was no prejudice in a prosecution for first-degree statutory rape and other offenses when the trial court refused to inform prospective jurors of defendant's affirmative defense of spousal coercion where defendant was able to testify about her fear of her husband and that her husband forced her to participate, the court informed the jury of the presumption of spousal coercion at the close of the trial, and the court instructed the jury on the presumption of spousal coercion twice more during deliberations. N.C.G.S § 15A-1213.

**3. Evidence— expert testimony—excluded—no error**

The trial court did not abuse its discretion in a prosecution for first-degree statutory rape and other offenses by excluding as too prejudicial the testimony of two defense experts where one had never met defendant and had no knowledge of the events on the day of the rape and the other, called for corroborative purposes, did little to corroborate defendant's claims of physical and sexual abuse or threats of abuse by her husband.

**4. Evidence— corroborative testimony—excluded—prejudicial and cumulative**

The trial court did not abuse its discretion in a prosecution for first-degree statutory rape and other offenses by excluding corroborative testimony by three defense witnesses regarding defendant's claim of misogynistic behavior and domestic violence by her husband where the trial court conducted a voir dire hearing, suggesting that it carefully weighed the probative value of the evidence against the danger of unfair prejudice, defendant did not mention any physical coercion by her husband when she spoke with the sheriff's department on the day of the rape,

STATE v. OWEN

[133 N.C. App. 543 (1999)]

defendant was able to testify about her fear that her husband would hurt her, and that testimony was corroborated.

**5. Rape— accessory—multiple attempts—double jeopardy**

The trial court did not err by denying defendant's motion to dismiss on double jeopardy grounds two of three counts of statutory rape. Although defendant argued that the two instances in which defendant's husband attempted to penetrate the eleven-year-old victim and the one incident where he was successful constituted one single continuous incident merging into one criminal act, the victim testified that defendant's husband penetrated her to some degree on three distinct occasions. The slightest penetration constitutes intercourse and the evidence as to each separate act was thus complete and sufficient to sustain three indictments for first-degree rape.

**6. Criminal Law— prosecutor's argument—jury nullification—mistrial denied**

The trial court did not err in a prosecution for statutory rape and other offenses in which defendant was charged as an accessory to her husband by denying defendant's motion for a mistrial following a closing argument in which the district attorney asked the jury to disregard the common law presumption of spousal coercion. The trial court sustained defendant's objection and gave a curative instruction.

**7. Rape— sufficiency of evidence—woman as aider and abettor**

The trial court did not err by denying defendant's motion to dismiss charges of first-degree statutory rape against a woman who acted as an aider and abettor to her husband. Even though a woman is physically incapable of committing rape upon another woman, she may still be convicted of rape if she aids and abets a male assailant and, viewing the evidence in the light most favorable to be State, defendant was an active participant in the rape by her husband of this victim.

**8. Appeal and Error— defective indictment—no assignment of error—not considered**

An argument that an indictment was defective was deemed abandoned because it was not set out in an assignment of error.

**STATE v. OWEN**

[133 N.C. App. 543 (1999)]

Appeal by defendant from judgments entered 8 October 1997 by Judge Julius A. Rousseau in Ashe County Superior Court. Heard in the Court of Appeals 6 January 1999.

*Attorney General Michael F. Easley, by Assistant Attorney General Karen E. Long, for the State.*

*Don Willey for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Crystal Pennington Owen ("defendant") appeals from judgments imposed upon conviction by a jury of one count of first degree statutory rape, two counts of attempted first degree statutory rape, one count of first degree sexual offense and one count of indecent liberties with a minor.

At trial, the State's evidence tended to show that R.D. ("victim"), an eleven-year old child, was at her grandmother's house helping pick and sort grapes the morning of 15 September 1996. The grandmother, defendant, defendant's husband Barry Artie Owen ("husband"), and the couple's two young children were also present. Defendant was the victim's step-sister and the husband was the victim's uncle.

After picking the grapes, defendant told the victim that if she wanted to play with the baby, she should come into the bedroom where the baby, defendant and the husband were located. Once in the bedroom, the victim testified that defendant pulled down her husband's pants and made the victim touch his penis. When the husband wanted the victim to kiss his penis, she refused and went back to the living room. A short time later, defendant called to the victim to descend into the basement. The victim testified that defendant walked behind her and provided little pushes as they descended the basement stairs.

Once in the basement, the husband put his finger in the victim's vagina. Then defendant and the husband made the victim lean on a dryer while the husband tried to penetrate her with his penis. The victim went over to a bed in the basement and the husband again attempted to insert his penis into the victim's vagina to the extent that the victim felt pain. Afterwards, defendant and the victim went upstairs. While the victim went to the bathroom, defendant got some lotion.

Defendant again made the victim go to the basement by "nudging" her down the stairs. The victim then saw the husband sitting on

a blue chair in the basement. The victim resisted going over to him, but testified that defendant made her go to the husband. Defendant told the victim to pull down her pants and then rubbed lotion on both the victim and the husband. The victim testified that defendant and the husband then sat her on the husband's lap. The victim testified that defendant held her hand over her mouth while the husband penetrated her. At this point, the victim felt a great deal of pain, her belly hurt and she felt like she had gone to the bathroom.

When the victim went upstairs to the bathroom, defendant followed her and both saw a great deal of blood in the victim's pants. Defendant took the victim to her trailer and told the victim's mother that she was having her menstrual period. The victim's mother and defendant helped the victim clean herself up. Defendant took the victim's bloody clothing out of the bathroom and ran them next door to the grandmother's house, but quickly returned.

The victim laid on her bed and bled so profusely that she left blood stains on the bed. She changed clothes again. Her mother and defendant went over to the grandmother's house to call the hospital. While they were gone, the victim told her father what had happened. He took her to the car where they met her mother coming back from the grandmother's house. They got in the car and as they were driving, the father told the mother what happened. When the mother asked the victim why she had not called out, the victim told her that defendant had held her hand over her mouth. The victim's parents stopped first at the sheriff's department to report the rape and then went to Ashe Memorial Hospital.

At the hospital the victim was seen by an emergency room doctor and a detective who had arrived from the sheriff's department. The emergency room doctor testified that on physical examination, the victim was too physically immature to have had her menstrual period. Because the bleeding was uncontrolled and the victim was traumatized, she was sent to the Watauga Medical Center ("WMC") where she immediately underwent surgery to repair the trauma. The treating surgeon at WMC testified that he estimated that the victim lost 20-25% of her blood volume before he repaired the tears to her body which had ruptured several blood vessels.

The victim's mother and two sheriff's detectives corroborated the victim's testimony. The second sheriff's detective testified that he had recovered bloody clothing and taken pictures of the bed and the blue chair in the grandmother's basement and had taken pictures of blood

at the grandmother's house. These pictures were admitted into evidence. He also testified that defendant had given him a statement early the next morning after the rape in which she basically corroborated the victim's testimony. Defendant stipulated that the victim's blood was found on the husband's jeans.

Defendant's trial testimony was consistent with her initial statement to the investigating detective except for one major difference. Defendant testified that she assisted her husband because she was afraid he would hurt both her and the victim more than he was already hurting them. In her statement made the night and early morning after the rape, she said nothing about being afraid of her husband. At trial, defendant's mother also testified that defendant had told her that the husband had forced her to help rape the victim.

On 15 September 1996, defendant and her husband were charged with raping the victim. The prosecutor moved to join for trial the cases involving defendant and her husband. On 12 March 1997 defendant filed pre-trial motions for a severance of the cases, a complete recordation of the proceedings, jury instruction on the common law presumption of spousal coercion and dismissal of the charges on constitutional, statutory and common law grounds. The trial court granted defendant's motions for complete recordation and severance of her trial from the trial of her husband.

On 6 October 1997, the case was tried with a jury. Defendant was convicted and sentenced to 240 to 297 months for the first degree rape conviction, 135 to 171 months for the attempted rapes, 240 to 297 months for the sexual offense and 16 to 20 months for indecent liberties with a child. Defendant appeals the convictions.

[1] Defendant first contends that the trial court erred in refusing to advise prospective jurors of defendant's common law affirmative defense of spousal coercion. The State counters that the trial court did not err, because spousal coercion is no longer a valid affirmative defense in this State.

The presumption of spousal coercion is a common law principle which states that "when a wife commits certain crimes in the presence of her husband, it is presumed, in the absence of evidence to the contrary, that she did so under his coercion." *State v. Smith*, 33 N.C. App. 511, 517, 235 S.E.2d 860, 864 (1977). This presumption is a judicially created rule of evidence established by the courts to protect married women at a time when they could not testify for themselves.

*See id.* at 519, 235 S.E.2d at 866; State *v. Seahorn,* 166 N.C. 373, 81 S.E. 687 (1914). However, this presumption came under intense scrutiny and criticism as the fight for women's rights have expanded and gained significant ground. *Id.* at 518, 235 S.E.2d at 865.

As a result of the advancements in the rights of women, in *Smith,* this Court suggested that North Carolina abolish the presumption of spousal coercion because it had long outlived its necessity and usefulness. "[W]hen it is shown that a married woman commits a crime in the presence of her husband, she should no longer be entitled to a presumption in her favor that she was compelled to so act." *Id.* This view was espoused by Chief Justice Walter Clark as early as 1914 in *Seahorn.* In his concurring opinion, Chief Justice Clark wrote, "[a]t common law there was a presumption that when a crime was committed by the wife in the presence of her husband, she acted under compulsion; but that presumption does not comport with Twentieth Century conditions. The contention that a wife has no more intelligence or responsibility than a child is now out of date." *Seahorn,* 166 N.C. at 378, 81 S.E. at 689.

Justice Clark's view is undoubtedly relevant today. We share his opinion that the presumption of spousal coercion is outdated. While we are not holding that a wife may never be coerced by her husband to commit an illegal act, we believe that no presumption of coercion should exist and that she must demonstrate, as others would be required, that the crime was committed under duress. However, our Supreme Court has not abolished the presumption of spousal coercion and it is beyond our authority to do so. *Cannon v. Miller,* 313 N.C. 324, 327 S.E.2d 888 (1985). Therefore, we must hold that the affirmative defense of spousal coercion remains a valid defense.

[2] As we conclude that the presumption of spousal coercion remains a valid affirmative defense, we must now address the issue of whether the trial court erred in failing to advise prospective jurors of defendant's claim to this defense. Defendant contends that the presumption exists as a matter of law and the trial court's refusal to so advise the prospective jurors was prejudicial error because it left the jury unaware of the defense's position and theory of the case. Although we agree with defendant that the trial court should have advised the jurors of defendant's defense of spousal coercion, the trial court's refusal to do so did not amount to prejudicial error.

North Carolina General Statutes section 15A-1213 requires the trial judge, prior to the selection of jurors, to inform the prospective

jurors of "any affirmative defense of which the defendant has given pretrial notice as required by Article 52, Motions Practice." N.C. Gen. Stat. § 15A-1213 (1997). The record shows that more than six months prior to trial, defendant filed a pre-trial motion asserting the common law affirmative defense of spousal coercion. In the pre-trial motion defendant requested that the trial court instruct the jury on the presumption that a wife who commits certain crimes in her husband's presence does so under his coercion and that the State bears the burden of rebutting this presumption. The trial court declined to inform the prospective jurors of the presumption of spousal coercion as an affirmative defense. Therefore, the trial court committed error.

In order for a new trial to be granted, the burden is on the defendant to not only show error but to also show that the error was so prejudicial that without the error it is likely that a different result would have been reached. *State v. Davis*, 110 N.C. App. 272, 277, 429 S.E.2d 403, 406 (1993). In the instant case, the trial court took many curative steps to ameliorate any prejudice defendant may have suffered.

First, defendant was able to testify about how she feared her husband. Defendant was also able to testify that her husband forced her to participate and her fear of her husband made her unable to stop the rape. Second, at the close of the trial, the trial court informed the jury about the presumption of spousal coercion. Lastly, during deliberations, the judge instructed the jury on the presumption of spousal coercion two more times. Based on these curative actions by the trial court, any error committed was sufficiently cured. This assignment of error is overruled.

[3] Defendant next contends that the trial court committed prejudicial error by excluding the testimony of expert witnesses Jennifer Herman and Dr. Ron R. Hood.

According to Rule 702 of the North Carolina Rules of Evidence, expert witness testimony is admissible if it will appreciably help the jury. *State v. Robertson*, 115 N.C. App. 249, 261, 444 S.E.2d 643, 649 (1994). While applying this test, the trial court must balance the probative value of the testimony against its potential for prejudice, confusion, or delay. *Id.* The trial court has wide discretion in determining whether expert testimony is admissible. *Id.* "[A] trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. Barts*, 316 N.C. 666, 679, 343 S.E.2d 828, 839 (1986).

Jennifer Herman, the Executive Director of a non-profit domestic violence corporation, was called by the defense to offer expert testimony concerning the profile evidence or the characteristics of domestic violence victims and predators. Ms. Herman had never met defendant and defendant had never used the domestic violence facilities operated by Ms. Herman. The trial court excluded this evidence, ruling that under Rule 403 the evidence's probative value was outweighed by the possibility of undue prejudice and confusion of the issues. The facts indicate that the trial court properly excluded this evidence since the testimony would have been prejudicial and done little to appreciably help the jury. Ms. Herman did not know defendant and had no knowledge of the events that occurred on the day of the rape.

Dr. Hood, a psychologist hired by the defense, gave defendant a psychological evaluation to measure her intellectual cognitive functioning and her emotional adjustment. Dr. Hood was called to offer expert testimony for corroborative purposes concerning defendant's passive role during the rape of the victim. After a *voir dire* hearing, the trial court ruled that the testimony was too prejudicial and likely to result in a confusion of the issues. While Dr. Hood testified that defendant told him of sexual abuse, he admitted that his research failed to find a specific domestic violence profile. Furthermore, when asked if defendant reported any physical coercion on the part of her husband on the day of the rape, Dr. Hood replied that he did not recall any physical coercion at that time. This testimony does little to corroborate defendant's claims of physical and sexual abuse or threats of abuse at the hands of her husband. Therefore, it was not an abuse of discretion for the trial court to exclude this evidence.

[4] Defendant next contends that the trial court committed reversible error by excluding corroborative testimony of her three witnesses, Polly Pennington Gilbert, Patsy Davis and Angela Pennington, regarding defendant's claims of a history of domestic violence and misogynistic behavior by her husband.

Even when corroborative testimony is admissible, the trial court still must determine whether its probative value outweighs the danger of unfair prejudice to the defendant. *State v. Coffey*, 345 N.C. 389, 404, 480 S.E.2d 664, 673 (1997). Whether or not to exclude evidence under Rule 403 is a matter within the sound discretion of the trial judge. *Id.* The record reveals that the trial court conducted a *voir dire* hearing suggesting that it carefully weighed the probative value

of the evidence against the danger of unfair prejudice to defendant. *See State v. Pierce*, 346 N.C. 471, 491, 488 S.E.2d 576, 587 (1997). Additionally, when defendant spoke with the sheriff's department on the day of the rape she never mentioned any physical coercion by her husband. Lastly, defendant was able to testify about her fear that her husband would hurt her on the day of the rape. This testimony was corroborated by Polly Pennington Gilbert during her trial testimony. Any other testimony on this matter would have been purely cumulative and the trial court, in its discretion, could properly decide to exclude all other evidence. Based on these facts, we conclude that the trial court did not abuse its discretion by excluding the testimony with respect to the history of domestic violence and misogynistic behavior by defendant's husband. This argument is overruled.

**[5]** Defendant next contends that the trial court committed reversible error in denying defendant's motion to dismiss counts two and three of the indictments for first degree statutory rape on double jeopardy grounds. Defendant argues that the two instances that the husband attempted to penetrate the victim and the one incident where the husband successfully penetrated the victim constituted one single continuous incident merging into one criminal act. Thus, her conviction for two counts of attempted rape and one count of rape on a theory of aiding and abetting her husband in a single act of vaginal intercourse is a violation of the provisions of the North Carolina and United States Constitutions. This argument lacks merit.

Upon a motion to dismiss, the evidence must be considered in the light most favorable to the State, giving it the benefit of every reasonable inference that can be drawn from the evidence. *State v. Earnhardt*, 307 N.C. 62, 296 S.E.2d 649 (1982). Contradictions and inconsistencies in the evidence are to be resolved in favor of the State. *State v. Brown*, 310 N.C. 563, 313 S.E.2d 585 (1984). First degree rape is "vaginal intercourse [w]ith a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim[.]" N.C. Gen. Stat. § 14-27.2(a)(1) (1993). The force necessary to constitute an element of the crime of rape need not be actual physical force. The use of force may be established by evidence that submission was induced by fear, duress or coercion. *State v. Midyette*, 87 N.C. App. 199, 201, 360 S.E.2d 507, 508 (1987). "Evidence of the slightest penetration of the female sex organ by the male sex organ is sufficient for vaginal intercourse and the emission of semen need not be shown." *Id.* Each

act of forcible vaginal intercourse constitutes a separate rape. *Id.* at 202, 360 S.E.2d at 508 (quoting *State v. Williams*, 314 N.C. 337, 351, 333 S.E.2d 708, 718 (1985). "[G]enerally rape is not a continuous offense, but each act of intercourse constitutes a distinct and separate offense." *State v. Dudley*, 319 N.C. 656, 659, 356 S.E.2d 361, 363 (1987) (quoting 75 C.J.S. *Rape* § 4).

In the instant case, the victim testified that defendant's husband penetrated her vagina, to some degree, with his penis on three distinct occasions. Even though defendant's husband did not fully penetrate the victim until his third attempt, the slightest penetration would still constitute vaginal intercourse. Thus, the evidence as to each separate act of intercourse with a minor was complete and sufficient to sustain three indictments for first degree rape. Therefore, under *Midyette*, each of the three acts of vaginal intercourse with the victim was a separate rape and defendant was properly indicted for all three offenses. Defendant's motion to dismiss counts two and three of the indictments for first degree rape were properly denied.

[6] Defendant next contends that the trial court committed prejudicial error in denying defendant's motion for mistrial following the State's closing argument requesting jury nullification. During closing arguments, the district attorney for the State asked the jury to disregard the common law presumption of spousal coercion because the law was antiquated. The defense objected to the State's argument to ignore the law. The trial court sustained the objection and gave a curative instruction to the jury. The defense then moved for a mistrial. The trial court denied the motion. This assignment of error is rejected as the trial court's instruction to the jury cured any prejudice to defendant.

[7] Finally, defendant contends that the trial court erred in denying defendant's motion to dismiss because the State has failed to meet the necessary elements to support a first degree rape charge. Specifically, defendant contends that a female, under the statutorily defined crime of first degree rape, cannot rape another female. The State counters that defendant, as an aider and abettor to the rape, was equally as guilty as the actual perpetrator. We agree with the State.

An aider or abettor is defined as a "person who is actually or constructively present at the scene of the crime and who aids, advises,

counsels, instigates or encourages another to commit the offense." *State v. Barnette*, 304 N.C. 447, 458, 284 S.E.2d 298, 305 (1981). A person who is present, aiding and abetting in a rape actually perpetrated by another is equally guilty with the actual perpetrator of the crime. *State v. Martin*, 17 N.C. App. 317, 318, 194 S.E.2d 60, 61 (1973). Even though a woman is physically incapable of committing rape upon another woman, she may still be convicted of rape if she aids and abets a male assailant in the rape of another woman. *Id.*

Viewing the evidence in the light most favorable to the State, the evidence shows that defendant was an active participant in the rape by her husband of the victim. Defendant pushed the victim down the stairs into the basement. Defendant forced the victim to go to the husband. Defendant ordered the victim to take off her clothes. Defendant, along with her husband, placed the victim on the husband's lap and held her hand over the victim's mouth while the husband penetrated the victim. The trial court properly denied the motion to dismiss.

[8] We decline to examine defendant's argument that the indictment was defective, because the scope of appellate review is limited to a consideration of those assignments of error set out in the record. Defendant has no assignment of error relating to a defective indictment, therefore, this argument is deemed abandoned. N.C.R. App. P. 10(a).

Based upon the foregoing, we conclude that defendant received a fair trial free from prejudicial error.

No error.

Judges LEWIS and WALKER concur.