LLOYD DAVIS GREGORY, III, as EXECUTOR OF THE ESTATES OF JOHN MARK GREGORY, SR. and KATHRYN GRUBBS GREGORY, Plaintiff v. KEVIN KILBRIDE, Defendant

No. COA00-667

(Filed 18 June 2002)

**1. Psychologists and Psychiatrists— failure to involuntarily commit patient—medical negligence standard of care**

The trial court did not err by requiring a deceased husband's executor to prove a medical negligence breach of the standard of care in a wrongful death action against a psychiatrist arising from the psychiatrist's decision not to involuntarily commit the husband, who thereafter killed his wife and himself, because (1) plaintiff alleged a medical negligence standard of care; (2) the duty required was that defendant psychiatrist conform to a psychiatric standard of care, and (3) plaintiff was properly permitted to present expert testimony to prove the applicable psychiatric standard of practice or conduct and to prove whether defendant psychiatrist breached that standard of practice.

GREGORY v. KILBRIDE

[150 N.C. App. 601 (2002)]

**2. Psychologists and Psychiatrists— failure to involuntarily commit patient—third-party wrongful death—general negligence principles**

General tort principles of negligence apply to an action against a psychiatrist for the wrongful death of a wife who was killed by her husband after the psychiatrist refused to involuntarily commit the husband to a mental health facility.

**3. Psychologists and Psychiatrists— failure to warn third party—not negligence**

A psychiatrist could not be held liabile in negligence for the wrongful death of a wife based upon the psychiatrist's failure to warn the wife of her husband's violent propensities after the psychiatrist examined the husband and determined that he should not be involuntairly committed, following which the husband killed the wife, because North Carolina does not recognize a duty by a psychiatrist to warn third persons.

**4. Mental Illness— involuntary committment statutes—violation not negligence per se**

The trial cour did not err in a wrongful death action by finding that N.C.G.S. § 122C-263 and the related involuntary commitment statutes are not public safety statutes, because although there may be some generalized safety implications in those statutes, the involuntary commitment statutes are designed to protect against arbitrary or ill-considered involuntary commitment. Therefore, a violation of the statutes does not constitute negligence per se.

**5. Appeal and Error— preservation of issues—grant of pretrial motion in limine—failure to present evidence**

Although plaintiff contends the trial court erred in a wrongful death action by granting defendant psychiatrist's motion to limit testimony regarding violations of certain requirements of the North Carolina Administrative Code including 10 N.C.A.C. § 15A.0129(a), plaintiff is not entitled to appellate review of the trial court's grant of defendant's pretrial motion in limine because: (1) to preserve the evidentiary issue for appeal where a motion in limine has been granted, the nonmovant must attempt to introduce the evidence at trial; and (2) plaintiff failed to offer the evidence at trial even though plaintiff contends his experts were prepared to testify regarding the requirements of the administrative code.

**6. Evidence— expert testimony—involuntary commitment— dangerousness—police officers and nurse unqualified**

In an action against a psychiatrist for the wrongful death of a husband and wife based upon the psychiatrist's decision not to involuntarily commit the husband who thereafter killed the wife and himself, two police officers and a nurse were not qualified to testify as experts on the issue of whether the husband met the "dangerousness" standard set forth in the involuntary commitment statutes because the statutes require the ultimate determination of dangerousness to self or others to be made by a physician or eligible psychologist.

**7. Evidence— expert testimony—involuntary commitment— qualification of experts**

Witnesses for defendant psychiatrist in a wrongful death action arising from the psychiatrist's decision not to involuntarily commit a husband who thereafter killed his wife and himself were properly permitted to testify as experts under N.C.G.S. § 8C-1, Rule 702, even though they did not spend the majority of their time in clinical practice or teaching as required in medical malpractice actions, since this case is not a classic medical malpractice case, and the witnesses qualified as experts under the general provisions of Rule 702.

**8. Trials— motion for new trial—consideration of extrinsic information**

The trial court did not abuse its discretion in a wrongful death action against a psychiatrist by failing to grant plaintiff a new trial on the basis that the jury considered alleged prejudicial extrinsic information during their deliberations, including a copy of N.C.G.S. § 122C-3 containing the definition of "mental illness" along with the additional "next of kin" definition on the same page, because the copy did not constitute prejudicial extraneous information since: (1) plaintiff did not object to the publication to the jury of the document containing the mental illness definition; and (2) the record indicates that copies of the document were provided to all members of the jury during the trial, and that the jurors retained those copies in open court without objection.

**9. Appeal and Error— appealability—denial of motion for summary judgment—denial of motion to dismiss—final judgment on the merits**

The trial court did not err in a wrongful death action by denying defendant's motion for summary judgment and motion to dismiss on the basis of qualified immunity, because a denial of these motions do not constitute reversible error where there was a final judgment in defendant's favor rendered at the trial on the merits.

Judge GREENE dissenting.

Appeal by plaintiff from judgment entered 11 March 1998 by Judge Howard E. Manning, Jr., in Cabarrus County Superior Court. Heard in the Court of Appeals 15 May 2001.

*Faison & Gillespie by O. William Faison and John W. Jensen for Plaintiff-Appellant.*

*Northup & McConnell, P.L.L.C. by Isaac N. Northup and Elizabeth E. McConnell for Defendant-Appellee.*

BRYANT, Judge.

This wrongful death action arises from the alleged negligent failure of Dr. Kevin Kilbride (Dr. Kilbride), a psychiatrist at Broughton Hospital, to involuntarily commit John Mark Gregory (Mark) and warn Kathryn Gregory (Kathryn) of her husband's violent propensities.

The underlying facts to the complaint tend to show Mark made numerous threats to kill his wife, Kathryn, and to kill himself during the thirty-six hours leading up to his evaluation by Dr. Kilbride. Fearing for Mark and Kathryn's safety, Mark's father, Lloyd Davis Gregory (plaintiff), petitioned for his involuntary commitment. Magistrate Judge Rowland signed the order of involuntary commitment on 9 April 1995.

After a brief standoff, Mark was taken into custody and transported to Cabarrus County Memorial Hospital where he was evaluated by a psychiatric social worker and an emergency room physician with training in psychology. Both found that Mark met the criteria for involuntary commitment. Mark was then taken to Broughton Hospital where he was evaluated by Dr. Kilbride for a statutorily-required second opinion. Although Dr. Kilbride determined that Mark

suffered from a mental illness (adjustment disorder) contained in DSM-III-R, he concluded that Mark's condition did not meet the requirements for involuntary commitment. Accordingly, Dr. Kilbride declined to involuntarily commit Mark and released him from the hospital.

Tragically, upon arriving home, Mark put three weapons in his truck—a shotgun, a .45 caliber pistol and an SRS rifle—and several hundred rounds of ammunition. He then drove to the house where Kathryn and their six-year-old son were staying, broke down the front door of the house and threatened to kill an occupant of the house while searching for Kathryn. After finding her, he killed her by firing seven bullets into her body at point-blank range using two different weapons. Thereafter, he shot and killed himself.

Plaintiff brought this action on behalf of his son and daughter-in-law's estates alleging among other things that Dr. Kilbride negligently (a) evaluated Mark at Broughton Hospital; (b) failed to adequately assess Mark for behaviors indicating that he was a danger to himself and others pursuant to N.C.G.S. § 122C-3; (c) failed to involuntarily commit Mark for treatment, thereby breaching the standard of care; (d) failed to exercise control over Mark to prevent him from hurting himself; and (e) breached a legal duty to warn Kathryn of Mark's dangerous condition. In response, Dr. Kilbride moved to dismiss the action on the grounds of qualified immunity; the trial court denied that motion as well as Dr. Kilbride's later motion for summary judgment.[1]

At the close of all the evidence, the trial court granted a partial directed verdict in favor of Dr. Kilbride on the grounds that "Kilbride did not have a separate legal duty to warn Kathy Gregory of Mark Gregory's release separate and apart from any general duty of care imposed under the common law of negligence." The remaining claims were sent to the jury which returned a verdict in favor of the defendant. Following a denial of a motion for a new trial, plaintiff appealed to this Court.

The issues on appeal are: Whether the trial court erred in (I) requiring plaintiff to prove a medical negligence breach of the standard of care; (II) granting Dr. Kilbride's motion for directed verdict; (III) finding that N.C.G.S. § 122C-263 is not a public safety statute;

---

1. The trial court's order references briefs filed in support of and in opposition to the motion for summary judgment; however the briefs were not included in the four volume record on appeal.

(IV) granting Dr. Kilbride's motion to limit testimony regarding violations of certain requirements of the North Carolina Administrative Code; (V) excluding certain of plaintiff's expert witnesses; and (VI) failing to grant plaintiff a new trial.

## I.

[1] Plaintiff first argues that the trial court erred by requiring plaintiff to prove a medical negligence breach of the standard of care. Unlike previous cases cited by the plaintiff addressing the negligent or wrongful *release* of a mental patient who had already been committed, this case presents a matter of first impression concerning *failure of a psychiatrist to involuntarily commit an individual* to a mental hospital an issue which has not been directly addressed by our courts.

In *Pangburn v. Saad*, 73 N.C. App. 336, 326 S.E.2d 365 (1985), this Court held that where a psychiatrist released a mental patient with a history of violent behavior who later stabbed his sister about twenty times, the action did not lie in medical malpractice. *Id.* at 338, 326 S.E.2d at 367. The Court relied in part on a similar Georgia case that distinguished the legal duty in negligent release cases from the legal duty in "classic medical malpractice" cases:

> "[W]here the course of treatment of a mental patient involves an exercise of 'control' over [the patient] by a physician who knows or should know that the patient is likely to cause bodily harm to others, an independent duty arises from that relationship and falls upon the physician to exercise that control with such reasonable care as to prevent harm to others at the hands of the patient."

*Id.* (alterations in original) (quoting *Bradley Center, Inc. v. Wessner*, 287 S.E.2d 716, 721 (Ga. Ct. App. 1982), *aff'd*, 296 S.E.2d 693 (Ga. 1982)). Where a mental patient is wrongfully discharged and injures a third party outside the physician-patient relationship, general tort principles of negligence apply. *Id.*

[2] Plaintiff further cites *Davis v. N.C. Dept. of Human Resources*, 121 N.C. App. 105, 465 S.E.2d 2 (1995), *cert. denied*, 343 N.C. 750, 473 S.E.2d 612 (1996), to support his contention that he should only have been required to prove that Dr. Kilbride was liable under ordinary tort principles of negligence. In *Davis*, a person with a history of aggressive and hostile behavior was involuntarily committed to a state mental hospital after beating a man to death and chasing a woman with a

knife. He was released after his condition improved through medication, although he was still mentally ill. The patient then attacked and killed a motorist. The defendant-physician argued that the plaintiff had the burden of proving a medical malpractice standard of care. *Id.* at 112, 465 S.E.2d at 7. This Court recognized that, as a general rule, there is no duty to protect others against harm from third persons. *Id.* However, under *Pangburn,* an independent duty arises to protect third persons from harm by the release of a mental patient who is involuntarily committed. *Id.* The *Davis* Court rejected the defendant's argument that the plaintiff has the burden of showing breach of a medical malpractice standard of care. *Id.* at 112-13, 465 S.E.2d at 7. Rather, the Court decided *Davis* based on a common law negligence theory, holding that the defendant "had a duty to exercise *reasonable care* in the protection of third parties from injury by [the mental patient]." *Id.* at 113, 465 S.E.2d at 7 (emphasis added). The application of ordinary negligence principles to actions by third parties is consistent with cases in other jurisdictions that have recognized a cause of action for wrongful release. *See, e.g., Semler v. Psychiatric Institute of Washington, D.C.,* 538 F.2d 121, *cert. denied,* 429 U.S. 827, 50 L. Ed. 2d. 90 (4th Cir. 1976); *Hicks v. United States,* 511 F.2d 407 (D.C. Cir. 1975); *Bradley Center, Inc. v. Wessner,* 296 S.E.2d 693 (Ga. 1982). From the outset we acknowledge the difficulty the trial court experienced in trying to determine the correct standard of care in this wrongful death action brought jointly on behalf of the third party wife (Kathryn) and the "patient" (Mark). The analysis of the legal duty owed by a defendant to a "patient" in a wrongful death claim based on failure to involuntarily commit a "patient" differs from the analysis of defendant's duty in a wrongful death claim for failure to warn a third party. Based on this Court's analyses in *Davis* and *Pangburn,* general negligence is clearly the proper theory to apply in the instant case as it relates to the third party action involving failure to warn the spouse.

The analysis of the proper theory to apply to a claim by a "patient" for the failure to involuntarily commit the "patient" is more a problematic one. A review of the trial court procedure in the instant case is helpful to this analysis. First, in his complaint plaintiff alleges "[Dr. Kilbride's] acts were not in accordance with the standards of practice among members of the same health care profession with similar experience situated in similar communities at the time Dr. Kilbride performed the referenced acts." In response Dr. Kilbride denied the existence of a physician-patient relationship. At trial the parties agreed that this was not a classic medical malpractice action.

However, the parties agreed that expert testimony was necessary on the issue of negligence based upon the facts in this case. Following the presentation of evidence at trial, the parties fully participated in the charge conference wherein the court declined to give the classic malpractice instruction but gave a modified instruction based on *Alt*[2] and *Pangburn*. The court instructed the Kilbride jury that a psychiatrist must use "accepted professional judgment, professional practice and professional standards of practice exercised by psychiatrists with similar training and experience situated in the same or similar communities . . . ."

> The elements of a cause of action based on negligence are: a duty, breach of that duty, a causal connection between the conduct and the injury and actual loss. A duty is defined as an 'obligation, recognized by the law, requiring the person to conform to a certain standard of conduct, for the protection of others against unreasonable risks.' A breach of that duty occurs when the person fails to 'conform to the standard required.'

*Davis*, 121 N.C. App. at 112, 465 S.E.2d at 6 (quoting W. Page Keeton et al., *Prosser and Keeton on The Law of Torts* § 30, at 164-65 (5th ed. 1984) (citations omitted)).

In the instant case, the duty required was that Dr. Kilbride conform to a psychiatric standard of practice. The record reveals the trial court found and the parties agreed, that expert testimony was necessary to prove the applicable psychiatric standard of practice or conduct. Such testimony was also necessary to prove whether or not Dr. Kilbride breached the psychiatric standard of practice, in essence a medical negligence standard. Plaintiff relies on *Davis* as support for his contention that requiring proof of liability under medical negligence was in error. However, we are not convinced that *Davis* or *Pangburn* would bar expert testimony of a medical negligence standard of care based on the facts of this case as relates to failure to involuntarily commit a "patient." As stated earlier in this opinion, general negligence is the proper theory to apply to a third party action involv-

---

2. *Alt v. John Umstead Hospital*, 125 N.C. App. 193, 479 S.E.2d 800 (1997). In *Alt*, the Court stated "[T]he dispositive issue is whether the actions of defendant's employees [doctor and nurse] conformed to the applicable standards of medical practice among members of the same health care profession with similar training and experience." *Id.* at 198, 479 S.E.2d at 804. In affirming the award of the Industrial Commission, the Court of Appeals determined that the actions of the doctor and nurse were "not in keeping with the applicable psychiatric standards of practice." *Id.* at 200, 479 S.E.2d 804-05.

ing failure to warn the spouse based on *Davis* and *Pangburn*. In ruling that "Kilbride did not have a separate legal duty to warn Kathy Gregory of Mark Gregory's release separate and apart from any general duty of care imposed under the common law of negligence," it is clear the trial court was not holding plaintiff to a higher standard of care with respect to the issue of failure to warn.

As to the standard necessary to prove liability of a doctor to one whom he fails to involuntarily commit, physician-patient privity notwithstanding, neither *Davis* nor *Pangburn* address the applicable standard. Therefore, we conclude that *Davis* and *Pangburn* do not bar expert testimony of a medical negligence standard of care in this wrongful death action involving the patient-decedent based on failure to involuntarily commit.

Having concluded that neither *Davis* nor *Pangburn* bar expert testimony of the standard of care, we hold the trial court did not err in allowing expert testimony and in instructing the jury on same. Moreover, because plaintiff alleged a medical negligence standard of care and presented trial testimony regarding that standard we cannot hold the court's requirement that plaintiff prove breach under these circumstances to be in error. This assignment of error is overruled.

## II.

[3] Plaintiff's next argument is that the trial court erred by granting Dr. Kilbride's motion for directed verdict on plaintiff's claim alleging breach of a duty to warn.

A motion for a directed verdict tests the legal sufficiency of the evidence to take the case to the jury. *West v. King's Dept. Store, Inc.*, 321 N.C. 698, 701, 365 S.E.2d 621, 623 (1988). In ruling upon the motion, the evidence is viewed in the light most favorable to the nonmoving party, who is to be given the benefit of every reasonable inference which may be drawn from it. *Manganello v. Permastone, Inc.*, 291 N.C. 666, 670, 231 S.E.2d 678, 680 (1977). Appellate review of an order granting a directed verdict is limited to the grounds asserted by the moving party at the trial level. *Crane v. Caldwell*, 113 N.C. App. 362, 438 S.E.2d 449 (1994).

The landmark case, *Tarasoff v. Regents of University of California*, 551 P.2d 334 (Cal. 1976), held that when a psychiatrist determines, or should have determined, that the patient presents a danger to another, he has a duty to warn the intended victim. *Id.* at

340. In the present case, plaintiff mistakenly relies on *Pangburn*, *Davis* and *King v. Durham County Mental Health Authority*, 113 N.C. App. 341, 439 S.E.2d 771 (1994), to support his argument that North Carolina recognizes this *"Tarasoff"* duty to warn. The cases cited by plaintiff address a "duty . . . to exercise control over the patient 'with such reasonable care as to prevent harm to others at the hands of the patient,' " *Davis*, 121 N.C. App. at 112, 465 S.E.2d at 7 (quoting *Pangburn*, 73 N.C. App. at 338, 326 S.E.2d at 367), and not a duty to warn. *See King*, 113 N.C. App. at 345-46, 439 S.E.2d at 774. Thus, unlike the holding in *Tarasoff*, North Carolina does not recognize a psychiatrist's *duty to warn* third persons. Therefore, we find no error by the trial court in granting a directed verdict for Dr. Kilbride regarding this issue.

## III.

[4] Plaintiff's next argument is that the trial court erred by finding that N.C.G.S. § 122C-263 is not a public safety statute. We disagree.

Our Supreme Court has held that when a statute imposes a duty on a person for the protection of others, it is a public safety statute and a violation of such a statute is negligence per se. *McEwen Funeral Service v. Charlotte Coach Lines*, 248 N.C. 146, 102 S.E.2d 816 (1958); *Lutz Industries, Inc. v. Dixie Home Stores*, 242 N.C. 332, 88 S.E.2d 333 (1955). A court may determine that a statute creates a minimum standard of care required to avoid liability for negligence. Nevertheless, "not every statute purporting to have generalized safety implications may be interpreted to automatically result in tort liability for its violation. Instead, a court should look at the statute's purpose in determining whether to adopt the statutory mandate as the reasonable man standard." *Baldwin v. GTE South, Inc.*, 110 N.C. App. 54, 57, 428 S.E.2d 857, 859-60 (1993), *rev'd on other grounds*, 335 N.C. 544, 439 S.E.2d 108 (1994).

The primary purpose of an involuntary commitment proceeding is to protect the person who, after due process, has been found to be both mentally ill and imminently dangerous, by placing such a person in a more protected environment where the danger may be minimized and his treatment facilitated; in a real sense the proceeding is an important step in his medical and psychiatric treatment. *See In re Farrow*, 41 N.C. App. 680, 255 S.E.2d 777 (1979).

In the instant case, we conclude that N.C.G.S. § 122C-263 and the related involuntary commitment statutes are not public safety

statutes. The purpose of the statutes is to provide a second examination to protect the rights of the individual who is the subject of the involuntary commitment proceedings. *See In re Lowery*, 110 N.C. App. 67, 428 S.E.2d 861 (1993). We hold that the involuntary commitment statutes are designed to protect against arbitrary or ill-considered involuntary commitment and although there may be some "generalized safety implications" in those statutes, they are not considered public safety statutes as defined by our Supreme Court and therefore any violation thereof cannot be considered negligence per se.

## IV.

**[5]** Plaintiff's next argument is that the trial court erred when it granted Dr. Kilbride's motion to limit testimony that the requirements of the North Carolina Administrative Code, 10 N.C.A.C. § 15A.0129(a), had been violated. Section 15A.0129(a)[3] provides in part: "differences of opinion . . . regarding admission, treatment or discharge issues shall be resolved through negotiation involving appropriate hospital and area program staff . . . ."

A trial court's ruling on a motion in limine is preliminary and is subject to change depending on the actual evidence offered at trial. The granting or denying of a motion in limine is not appealable. To preserve the evidentiary issue for appeal where a motion in limine has been granted, the non-movant must attempt to introduce the evidence at trial. *Condellone v. Condellone*, 129 N.C. App. 675, 681, 501 S.E.2d 690, 695, *review denied*, 349 N.C. 354, 517 S.E.2d 889 (1998).

Plaintiff contends that his experts were *prepared* to testify regarding the requirements of the administrative code but plaintiff failed to offer this evidence at trial. Therefore, plaintiff is not entitled to appellate review of the trial court's grant of defendant's pretrial motion in limine and the trial court's exclusion of this evidence is not properly before this Court.

## V.

**[6]** Plaintiff's next argument is that the trial court erred by excluding certain of plaintiff's expert witnesses while allowing defendant to call experts.

---

3. Rule .0126 superseded Rule .0129, until the effective date of the repeal of Rule .0129 on 1 July 1998.

Rule 702 of the North Carolina Rules of Evidence controls the admissibility of expert testimony:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.

N.C.G.S. § 8C-1, Rule 702(a) (2001). A "trial court has wide discretion in determining whether expert testimony is admissible . . . [and] may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. Owen*, 133 N.C. App. 543, 549, 516 S.E.2d 159, 164, *review denied*, 351 N.C. 117, 540 S.E.2d 744 (1999).

First, we conclude that the trial court did not abuse its discretion by excluding expert testimony of several of plaintiff's witnesses. The witnesses—two police officers and a nurse—were prepared to testify on the issue of whether Mark met the "dangerous" standard, set forth under the involuntary commitment statutes, when he was examined by Dr. Kilbride. Plaintiff contends that the witnesses should have been allowed to testify because N.C.G.S. § 122C-261(a) provides:

> *Anyone* who has knowledge of an individual who is mentally ill and either (i) dangerous to self, as defined in G.S. 122C-3(11)a., or dangerous to others, as defined in G.S. 122C-3(11)b. . . . may appear before a clerk or assistant or deputy clerk of superior court or a magistrate and execute an affidavit to this effect, and petition the clerk or magistrate for issuance of an order to take the respondent into custody for examination by a physician or eligible psychologist.

N.C.G.S. § 122C-261(a) (2001) (emphasis added). This portion of the involuntary commitment statutes refers to the process for petitioning the clerk or magistrate to make an initial determination as to whether an individual should be taken into custody for an examination. Other relevant portions of the involuntary commitment statutes require the *ultimate* determination of dangerousness to self or others as defined in N.C.G.S. § 122C-3(11)(a) and (b) to be made by a *physician or eligible psychologist*, and it is the physician or psychologist who makes the recommendation for inpatient commitment. Therefore, the trial court did not err in finding that plaintiff's wit-

nesses did not qualify as experts on the issue of "dangerousness" as defined by the involuntary commitment statutes.

**[7]** Second, with respect to defendants' experts, plaintiff contends they do not meet the Rule 702 standard. Plaintiff asserts that defendant's experts did not qualify as experts because they did not spend the majority of their time in clinical practice or teaching. Plaintiff wanted the trial court to use the 702(b) requirements that the expert witness must: 1) specialize in the same specialty as the defendant; and 2) during the year preceding the date of the involuntary commitment proceedings, the expert witness must have devoted a majority of his or her professional time to either or both of the following: a) active clinical practice of the same or similar speciality that is the subject of the complaint; or b) teaching in an accredited health professional school or residency or clinical research program in the same health profession as the defendant. *FormyDuval v. Bunn*, 138 N.C. App. 381, 530 S.E.2d 96, *review denied*, 353 N.C. 262, 546 S.E.2d 93 (2000). However, plaintiff relies on 702(b), which applies to medical malpractice actions and this is not a classic medical malpractice case. The trial court properly found that these witnesses qualified as experts under the general provisions of Rule 702. Therefore, we hold that the trial court did not abuse its discretion by determining that all three witnesses were qualified to give expert testimony.

## VI.

**[8]** Plaintiff's final argument is that the trial court erred by failing to grant plaintiff a new trial on the basis that the jury considered prejudicial extrinsic information during their deliberations.

Plaintiff contends that the defense verdict for Dr. Kilbride was based in large part on extrinsic evidence brought into the jury room. The alleged extrinsic evidence was a copy of N.C.G.S. § 122C-3, which contained the definition of "mental illness" of which the court took judicial notice. The "next of kin" definition was one of several definitions on the same page. Plaintiff contends that the majority of jurors based their verdict on the "next of kin" definition even though that definition was not at issue in the case. Several jurors testified by affidavit that based on the "next of kin" definition, they could not find for the plaintiff.

We will not reverse a trial court's decision denying a new trial, unless an abuse of discretion is clearly shown resulting in a substantial miscarriage of justice. *Horner v. Byrnett*, 132 N.C. App. 323, 511

S.E.2d 342 (1999). Generally, once a verdict is rendered, jurors may not impeach it. *State v. Cherry,* 298 N.C. 86, 100, 257 S.E.2d 551, 560 (1979), *cert. denied,* 446 U.S. 941, 64 L. Ed. 2d 796 (1980). However, N.C.G.S. § 8C-1, Rule 606(b) permits testimony by a juror as to whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. *State v. Lyles,* 94 N.C. App. 240, 244, 380 S.E.2d 390, 393 (1989). Extraneous information is information that reaches a juror without being introduced in evidence and does not include information which a juror has gained in his own experience. *State v. Rosier,* 322 N.C. 826, 832, 370 S.E.2d 359, 363 (1988). A juror may not, however, testify "as to . . . the effect of anything upon his or any other *juror's mind* or emotions as influencing him to assent to or dissent from the verdict . . . or concerning his mental processes in connection therewith . . . ." N.C.G.S. § 8C-1, Rule 606(b) (2001) (emphasis added).

Here, the court was asked to take judicial notice of the "mental illness" definition found in N.C.G.S. § 122C-3. Plaintiff did not object to the publication to the jury of the document containing the mental illness definition. The record indicates that copies of the document were provided to all members of the jury during the trial, and that the jurors retained those copies in open court without objection. The "next-of-kin" definition was on the same page as the definition of "mental illness," as were other definitions. Plaintiff's motion for a new trial was based in part on the fact that the jury had a copy of N.C.G.S. § 122C-3 in its possession during deliberations. After the verdict, plaintiff obtained affidavits from several jurors setting forth the effect of the "extraneous information" on their verdict. The trial court struck the affidavits as an improper attempt by the jurors to impeach their own verdict in violation of Rule 606(b).

We hold that the trial court did not abuse its discretion by denying plaintiff a new trial based on the jury's possession of a copy of N.C.G.S. § 122C-3 as it did not constitute prejudicial extraneous information.

## DEFENDANT'S CROSS ASSIGNMENTS OF ERROR

### VII.

[9] Dr. Kilbride contends that the trial court erred in denying defendant's motion for summary judgment on the basis of qualified immunity.

The purpose of summary judgment is to bring litigation to an early decision on the merits without the delay and expense of a trial when no material facts are at issue. *McNair v. Boyette*, 282 N.C. 230, 192 S.E.2d 457 (1972). The denial of a motion for summary judgment based on the defense of qualified immunity does affect a substantial right and is immediately appealable. *See Rousselo v. Starling*, 128 N.C. App. 439, 495 S.E.2d 725 (1998). However, after there has been a trial, the purpose of summary judgment cannot be served. Improper denial of a motion for summary judgment is not reversible error when the case has proceeded to trial and has been determined on the merits by the trier of the facts, either judge or jury. *Harris v. Walden*, 314 N.C. 284, 286, 333 S.E.2d 254, 256 (1985).

Here, Dr. Kilbride moved for summary judgment based on qualified immunity. The trial court denied the motion for summary judgment. Dr. Kilbride did not appeal the denial of the motion for summary judgment based on qualified immunity and the case proceeded to trial. The jury returned a verdict in favor of Dr. Kilbride. Based on the foregoing we hold that the trial court's denial of Dr. Kilbride's motion for summary judgment does not constitute reversible error where, as here, there was a final judgment in his favor rendered at the trial on the merits.

## VIII.

Dr. Kilbride argues that the trial court erred in denying his motion to dismiss based on his claim of sovereign immunity because: (A) plaintiff did not adequately plead a cause of action against Dr. Kilbride individually; (B) the trial court was without jurisdiction to decide claims for negligence against a defendant sued in his official capacity; and (C) plaintiff has failed to adequately plead a cause of action against Dr. Kilbride as a public official giving rise to individual liability.

Based on our ruling in Section VII we do not deem it necessary to further address the cross assignments of error stated herein.

NO ERROR.

Judge TIMMONS-GOODSON concurs.

Judge GREENE dissents with a separate opinion.

GREENE, Judge, dissenting.

I believe the evidence before the trial court at the summary judgment hearing entitled Dr. Kilbride to a judgment in his favor based on section 122C-210.1 immunity. I, therefore, dissent.

*Summary Judgment*

While the majority refuses to address the correctness of the trial court's denial of Dr. Kilbride's motion for summary judgment, I believe the issue is properly before this Court and must be addressed.

Ordinarily, an improper " 'denial of a motion for summary judgment is not reversible error when the case has proceeded to trial and has been determined on the merits by the trier of the facts.' " *Concrete Serv. Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 680, 340 S.E.2d 755, 757 (citation omitted), *cert. denied*, 317 N.C. 333, 346 S.E.2d 137 (1986). This is so because granting " 'a review of the denial of the summary judgment motion after a final judgment on the merits . . . would mean that a party who prevailed at trial after a complete presentation of evidence by both sides with cross-examination could be deprived of a favorable verdict,' " thus allowing " 'a verdict reached after the presentation of all the evidence to be overcome by a limited forecast of the evidence.' " *Id.* at 681, 340 S.E.2d at 757 (citation omitted).

In this case, the logic behind refusing to review denials of summary judgment motions does not apply as Dr. Kilbride, the party moving for summary judgment, received a favorable verdict after a trial on the merits. In addition, Dr. Kilbride has not appealed the trial court's denial of his summary judgment motion but has cross-assigned error to that denial because it deprives him "of an alternative basis in law for supporting the judgment." *See* N.C.R. App. P. 10(d). Thus, if summary judgment had been granted in favor of Dr. Kilbride, the result would have been the same as the trial court's final judgment.

With respect to Dr. Kilbride's ability to appeal the denial of his summary judgment motion, this Court has specifically held that the denial of a summary judgment motion raising a qualified immunity defense affects a substantial right and is immediately appealable. *Rousselo v. Starling*, 128 N.C. App. 439, 443, 495 S.E.2d 725, 728, *appeal dismissed and disc. review denied*, 348 N.C. 74, 505 S.E.2d 876 (1998). Even though Dr. Kilbride was entitled to an immediate

appeal based on a substantial right, he was not required to immediately appeal the trial court's denial of his summary judgment motion. *See Dep't of Transp. v. Rowe*, 351 N.C. 172, 176, 521 S.E.2d 707, 710 (1999) (where "a party is entitled to an interlocutory appeal based on a substantial right, that party may appeal but is not required to do so"). Thus, Dr. Kilbride was not required to immediately appeal the trial court's denial of his summary judgment motion, but he could wait for final judgment and timely appeal the interlocutory order. *See Floyd and Sons, Inc. v. Cape Fear Farm Credit*, 350 N.C. 47, 51, 510 S.E.2d 156, 159 (1999).

*Immunity*

At the time plaintiff's cause of action arose, North Carolina General Statutes provided:

> No facility or any of its officials, staff, or employees, or any physician or other individual who is responsible for the examination, management, supervision, treatment, or release of a client and who follows accepted professional judgment, practice, and standards is civilly liable, personally or otherwise, for actions arising from these responsibilities or for actions of the client. This immunity is in addition to any other legal immunity from liability to which these facilities or individuals may be entitled.

N.C.G.S. § 122C-210.1 (Supp. 1985).[4] This Court has interpreted section 122C-210.1 as providing immunity from liability as long as physicians' decisions are "an exercise of professional judgment." *Alt v. Parker*, 112 N.C. App. 307, 314, 435 S.E.2d 773, 777 (1993), *cert. denied*, 335 N.C. 766, 442 S.E.2d 507 (1994). This is so because in deciding what actions to take regarding a client, a facility's staff "should not be required to make each decision in the shadow of an action for damages." *Youngberg v. Romeo*, 457 U.S. 307, 325, 73 L. Ed. 2d 28, 43 (1982). It is not appropriate for the courts to decide " 'which of several professionally acceptable choices should have been made,' " *id.* at 321, 73 L. Ed. 2d at 41 (citation omitted); *Alt*, 112 N.C. App. at 314, 435 S.E.2d at 777, and although an expert's opinion may differ from the judgment exercised by the professional, that opinion "represents only another 'professionally acceptable choice,' "

---

4. This section was amended in 1995, effective 1 January 1997 and applicable to commitments on or after that date, to insert "custody" in the first sentence before "examination" and added "and applies to actions performed in connection with, or arising out of, the admission or commitment of any individual pursuant to this Article" in the second sentence after "entitled." 1995 N.C. Sess. Laws ch. 739, § 3.

*Alt,* 112 N.C. App. at 316, 435 S.E.2d at 778. Therefore, if a decision is made by a professional, it "is presumptively valid," and "liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg,* 457 U.S. at 323, 73 L. Ed. 2d at 42. In other words, liability can be imposed only if "the decision was 'so completely out of professional bounds as to make it explicable only as an arbitrary, nonprofessional one. This standard appropriately defers to the necessarily subjective aspects of the decisional process of institutional medical professionals.' " *Patten v. Nichols,* 274 F.3d 829, 845 (4th Cir. 2001) (citation omitted); *see also Shaw v. Strackhouse,* 920 F.2d 1135, 1146 (3d Cir. 1990) (professional judgment "falls somewhere between simple negligence and intentional misconduct").

According to Dr. Kilbride's deposition testimony, he evaluated Mark consistent with his normal methods and the procedures of Broughton Hospital. In addition, Dr. Kilbride presented depositions from several experts stating their diagnosis of Mark would have been similar to Dr. Kilbride's diagnosis and in their professional opinion, they did not believe Mark met the requirements for involuntary commitment under North Carolina law. Moreover, the experts testified Dr. Kilbride's diagnosis of Mark was not unreasonable. Assuming plaintiff had experts stating Dr. Kilbride's release of Mark was error, that is but "another 'professionally acceptable choice.' " Thus, no genuine issues of material fact were raised by the evidence at the summary judgment hearing and Dr. Kilbride was entitled to a judgment as a matter of law. There is no evidence in the record that Dr. Kilbride substantially departed from accepted professional judgment or that his judgment was arbitrary or unprofessional. Accordingly, the trial court erred in denying his motion for summary judgment based on section 122C-210.1 immunity. I, therefore, would not address the issues raised by plaintiff's appeal.[5]

---

5. Plaintiff argues that even if section 122C-210.1, as it presently reads, is construed to provide immunity to Dr. Kilbride, the version of that statute in effect in 1995 did not provide immunity. I disagree. In 1995, the legislature did add a sentence specifically granting immunity to a physician admitting a person to a mental health institution. The prior version of the statute, however, extended immunity to any physician responsible for a client's "examination," and the admission process necessarily involved an examination of the client. The amendment of section 122C-210.1 must, therefore, be read as simply clarifying the statute, not altering or providing for additional immunity. *See Davis v. N.C. Dep't of Human Resources,* 121 N.C. App. 105, 114-15, 465 S.E.2d 2, 8 (1995) (legislative amendment may be viewed as clarifying the law, not changing it), *disc. review denied,* 343 N.C. 750, 473 S.E.2d 612 (1996).