CYNTHIA GAIL MILLER AND GUY MORRIS MILLER, PLAINTIFFS v. FORSYTH MEMOR-
IAL HOSPITAL, INC. D/B/A "PIEDMONT MEDICAL SPECIALISTS"; PIEDMONT
MEDICAL SPECIALISTS, P.L.L.C.; NOVANT HEALTH, INC.; AND NOVANT
HEALTH TRIAD REGION, L.L.C., DEFENDANTS

No. COA04-1179

(Filed 20 September 2005)

**1. Appeal and Error— preservation of issues—motion in lim-
ine—failure to object at trial**

Plaintiff did not object at trial and therefore did not preserve
for appeal the question of whether the trial court erred in grant-
ing defendants' pretrial motion in limine. The ruling on the evi-
dence was made before 1 October 2003, the effective date of the
amendment to N.C.G.S. § 8C-1, Rule 103, concerning the need for
renewing objections.

**2. Witnesses— expert—doctor—testimony limited—no abuse
of discretion**

The trial court did not abuse its discretion in a medical mal-
practice trial where plaintiffs presented a doctor as an expert in
anesthesiology and pain management; the court permitted him to
testify concerning his diagnosis of sciatic neuropathy, but did not
allow him to testify concerning demyelination of the sciatic nerve
since he relied on another doctor's diagnosis in that regard; the
court did not allow him to testify about causation because he had
not performed any independent diagnostic studies; and the doc-
tor who performed the diagnostic studies was allowed to testify
about causation.

**3. Costs— mediation fees—witness fees—depositions—
exhibits**

The trial court erred in a medical malpractice case by not
taxing mediation costs against plaintiffs, but did not err by not
taxing costs for expert witness fees, exhibits, and depositions.
N.C.G.S. §§ 6-20, 7A-305(d).

Appeal by plaintiffs from judgment entered 6 October 2003 and
cross-appeal by defendants from judgment entered 31 October 2003
by Judge Lindsay R. Davis, Jr. in Forsyth County Superior Court.
Heard in the Court of Appeals 12 May 2005.

*Elliot Pishko Morgan, P.A., by David C. Pishko, for plaintiff-appellant.*

*Wilson & Iseman, L.L.P., by Tamura D. Coffey, Linda L. Helms, Kevin B. Cartledge and Maria C. Papoulias, for defendant-appellees.*

*Glenn, Mills & Fisher, P.A., by William S. Mills for the North Carolina Academy of Trial Lawyers; and Roberts & Stevens, P.A., by Peter Buckley McGuire for the North Carolina Association of Defense Attorneys, amicus curiae.*

STEELMAN, Judge.

Plaintiffs, Cynthia and Guy Miller, appeal the trial court's judgment dismissing their complaint based upon the jury's verdict. Defendants cross-appeal the trial court's denial of their motion to tax costs against plaintiffs.

Plaintiffs commenced this action seeking damages for Mrs. Miller's personal injuries, which were alleged to have been caused as a result of defendants' medical negligence. Piedmont Medical Specialists (Piedmont) is a physician practice owned by defendant Forsyth Memorial Hospital, which is in turn, a wholly-owned subsidiary of Novant Health, Inc. Plaintiff, Mr. Miller, sought damages for loss of consortium.

On 31 December 1999, Mrs. Miller was suffering from bronchitis and went to Piedmont's offices for treatment. John Edwards, a physician's assistant, examined Mrs. Miller and prescribed an injection of Rocephin, an antibiotic. Nurse Linda Smith administered the injection in Mrs. Miller's right buttock. Upon receiving the injection, Mrs. Miller contends she felt intense pain and a burning sensation in her buttock. Upon leaving the doctor's office, she became faint and was taken back to an examining room where Edwards ordered blood work to determine the cause. Since receiving the injection, Mrs. Miller contends she has suffered continuous pain and discomfort in her lower back, right hip, and right leg. She received medical treatment from Dr. Richard Bey, a neurologist, and Dr. T. Stuart Meloy, a pain management specialist. Dr. Bey diagnosed Mrs. Miller's condition as "sciatic neuropathy with demyelination" and stated the condition was caused by the injection she received from Nurse Smith.

The matter came on for jury trial at the 22 September 2003 session of superior court. The jury returned a verdict in favor of defend-

ants on 1 October 2003, finding Mrs. Miller was not injured by defendants' negligence. Plaintiffs appealed. Following the entry of judgment, defendants filed a motion for the costs of the action to be taxed against plaintiffs. The trial court ordered plaintiffs to pay court costs, but denied defendants' motion seeking other costs, including deposition costs, mediation costs, expert witness fees, and exhibit costs. Defendants appeal.

### I.  Plaintiffs' Appeal

[1] In plaintiffs' first argument, they contend the trial court erred in granting defendants' pretrial motion *in limine*, which found certain matters plaintiffs sought during discovery were protected under the peer review privilege. We disagree.

On 7 February 2003, plaintiffs served Forsyth with their first set of interrogatories and first request for production of documents. Defendants asserted that certain documents were protected from discovery under the peer review privilege as set forth in N.C. Gen. Stat. § 90-21.22 and refused to produce these documents. Plaintiffs filed a motion to compel discovery, and also sought an order compelling Edwards, the physician's assistant, and Dr. Marx to answer related questions asked during their respective depositions. On 6 August 2003, Judge L. Todd Burke denied plaintiffs' motion to compel and granted defendants' motion for a protective order prohibiting plaintiffs from obtaining the requested documents. Before trial, defendants filed a motion *in limine* to prohibit plaintiffs from offering evidence regarding the peer review process, certain affidavits, and offering evidence that defendants failed to prepare an incident report. On 22 September 2003, prior to the commencement of the trial, Judge Davis granted defendant's motion *in limine*, but emphasized the conditional nature of his ruling, instructing the parties:

> Well, all orders in limine are conditional and even if a motion is granted that does not mean that the party affected may not raise an issue during trial if evidence has been received that would make it necessary or desirable for portions of evidence that is subject to the order in limine to be presented to the jury.

> In that light, I will grant the motion which we will call for convenience sake the peer review motion and the three elements that are delineated in that. And that is, of course, subject to the conditional nature of such orders.

**MILLER v. FORSYTH MEM'L HOSP., INC.**

[173 N.C. App. 385 (2005)]

During the hearing on the motion *in limine*, plaintiffs indicated they understood the conditional nature of the judge's ruling, stating they would question certain witnesses during the trial concerning the peer review process, and upon defendants' objection, they understood the trial court would determine whether the elicited testimony was privileged. The case then proceeded to trial before a jury.

A trial court's pretrial ruling on a motion *in limine* is merely "preliminary and subject to change during the course of trial, depending upon the actual evidence offered at trial." *Gregory v. Kilbride*, 150 N.C. App. 601, 611, 565 S.E.2d 685, 693 (2002). The trial court's grant or denial of a motion *in limine* is not appealable. *Id.* In order to preserve the evidentiary issues for appeal where such a motion had been granted, the party objecting to the grant of the motion "must attempt to introduce the evidence at trial." *Id.* In this case, even though the trial court brought the conditional nature of its ruling to plaintiffs' attention, they did not attempt to introduce any evidence regarding defendants' peer review process or that an internal investigation had occurred following the injection.

Effective 1 October 2003, the rule requiring that a party attempt to offer evidence in order to preserve the evidentiary issue for appeal was changed, so that "[o]nce the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." N.C. Gen. Stat. § 8C-1, Rule 103 (a)(2) (2004)[1]. However, the amendment applies only to rulings on evidence made on or after 1 October 2003. *State v. Pullen*, 163 N.C. App. 696, 701, 594 S.E.2d 248, 251-52 (2004) (citing 2003 N.C. Sess. Laws ch. 101).

The trial court granted defendants' motion *in limine* on 22 September 2003. Plaintiffs rested their case-in-chief on 29 September 2003. Defendants presented their evidence on 29 and 30 September 2003. Plaintiffs offered no rebuttal evidence. The trial court conducted the charge conference and counsel made their final arguments to the jury on 30 September 2003. On 1 October 2003 the trial court instructed the jury, the jury deliberated, and returned its verdict. At no time during the trial did plaintiffs attempt to present the evidence, which was the subject of the motion *in limine*, to the jury.

---

1. We note that on 19 July 2005 this Court, in *State v. Tutt*, 171 N.C. App. 518, 524, —— S.E.2d ——, —— (2005), held the 2003 amendment to Rule 103 of the Rules of Civil Procedure was unconstitutional. This holding does not impact our analysis in this case as we are applying the pre-amendment version of Rule 103.

Plaintiffs did not move to reopen the evidence. The only ruling upon this evidence was made on 22 September 2003. As such, the ruling is governed by the previous version of Rule 103(a)(2) of the Rules of Civil Procedure and not the version applicable to rulings made on or after 1 October 2003. By failing to offer this evidence at trial, plaintiffs failed to preserve this issue on appeal. This argument is without merit.

[2] In plaintiffs second argument, they contend the trial court erred in excluding the opinion testimony of Dr. Meloy as to the cause of Mrs. Miller's nerve injury. We disagree.

Rule 702 of the North Carolina Rules of Evidence governs the admissibility of expert testimony, providing: "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion." N.C. Gen. Stat. § 8C-1, Rule 702(a) (2004). "It is well-established that trial courts must decide preliminary questions concerning . . . the admissibility of expert testimony." *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004). As such, trial courts are afforded a wide latitude when determining the admissibility of expert testimony. *Id.* at 458, 597 S.E.2d at 686. Therefore, we will not overturn the trial judge's ruling in such a situation absent a showing that the trial court abused its discretion. *Id.* An abuse of discretion occurs when the trial court's ruling is "manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." *Briley v. Farabow*, 348 N.C. 537, 547, 501 S.E.2d 649, 656 (1998).

*Howerton* sets forth a three-step test for determining the admissibility of expert testimony: "(1) Is the expert's proffered method of proof sufficiently reliable as an area for expert testimony? (2) Is the witness testifying at trial qualified as an expert in that area of testimony? (3) Is the expert's testimony relevant?" 358 N.C. at 458, 597 S.E.2d at 686 (internal citations omitted). The issue presented in this case concerns only the second step of the inquiry, since plaintiffs do not challenge the trial court's ruling based upon the first or third steps.

" 'The essential question in determining the admissibility of opinion evidence is whether the witness, through study and experience, has acquired such skill that he is better qualified than the jury to form an opinion as to the subject matter to which his testimony applies.' "

*State v. Fuller*, 166 N.C. App. 548, 560 (2004) (quoting *State v. Phifer*, 290 N.C. 203, 213, 225 S.E.2d 786, 793 (1976)). Dr. Meloy is an anesthesiologist who specializes in pain medicine. He graduated from an accredited medical school, is board-certified by the American Board of Anesthesia, and holds a sub-certification in pain medicine.

Plaintiffs tendered Dr. Meloy as an expert in the fields of anesthesiology and pain management. Defendants objected to Dr. Meloy testifying in the field of neurology or giving an opinion concerning the etiology of Mrs. Miller's pain. During a brief *voir dire* hearing, Dr. Meloy testified he was not a neurologist, he did not interpret any EMG or nerve conduction studies, and had not performed any independent diagnostic studies to determine the cause of Mrs. Miller's pain. The trial court ruled that Dr. Meloy could testify as an expert witness in the fields of anesthesia and pain management, but deferred ruling on the objection to potential causation testimony until further testimony was received.

Upon defendants' objection to a question concerning the causation of Mrs. Miller's pain, a second *voir dire* hearing was conducted. Dr. Meloy testified his diagnosis was based upon Dr. Bey's EMG study showing demyelination with the sciatic nerve. He further stated he made his own diagnosis, independent of Dr. Bey, of sciatic neuropathy, but that "the demyelination aspect was based on the test that [Dr. Bey] had performed." On cross-examination, Dr. Meloy acknowledged he did not make his own neurological diagnosis of Mrs. Miller. Following the *voir dire* hearing, the court ruled Dr. Meloy was "[p]ermitted to testify with respect to his finding or determination consistent with sciatic neuropathy." Subsequent to this ruling, plaintiffs elicited testimony from Dr. Meloy on *voir dire* that Mrs. Miller had sciatic neuropathy caused by the Rocephin injection on 31 December 1999.

The trial court permitted Dr. Meloy to testify as to the diagnosis he made, that of sciatic neuropathy. However, the trial court refused to allow him to testify as to the diagnosis of demyelination of the sciatic nerve since he did not make such a diagnosis himself, but relied on Dr. Bey's diagnosis. Further, the trial court did not allow Dr. Meloy to testify as to causation since he had not performed any independent diagnostic studies to determine the cause of Mrs. Miller's pain. Further, Dr. Meloy never testified that he relied upon Dr. Bey's reports or diagnosis in giving an opinion that Mrs. Miller's sciatic neuropathy was caused by the injection of Rocephin. It should be noted

that Dr. Bey did testify that Mrs. Miller's condition was caused by the Rocephin injection. Based on the evidence presented to the trial court, we discern no abuse of discretion on the part of the trial judge. This argument is without merit.

## II.  Defendants' Cross-Appeal

**[3]** Defendants cross-appeal from the trial court's denial of their motion to tax costs following a favorable jury verdict.

N.C. Gen. Stat. § 6-1 provides: "To the party for whom judgment is given, costs shall be allowed as provided in Chapter 7A and this Chapter." N.C. Gen. Stat. § 7A-305 governs the costs which are assessable in civil actions. In addition, N.C. Gen. Stat. § 6-20 provides for the taxation of costs in the court's discretion. In analyzing whether the trial court properly denied defendants' motion for cost we must undertake a three-step analysis. *Lord v. Customized Consulting Specialty, Inc.*, 164 N.C. App. 730, 734, 596 S.E.2d 891, 895 (2004). First, we must determine whether the cost sought is one enumerated in N.C. Gen. Stat. § 7A-305(d); if so, the trial court is required to assess the item as costs. *Id.* Second, where the cost is not an item listed under N.C. Gen. Stat. § 7A-305(d), we must determine if it is a "common law cost" under the rationale of *Charlotte Area. Id.* (defining " 'common law' costs as being those costs established by case law prior to the enactment of N.C. Gen. Stat. § 7A-320 in 1983.") Third, if the cost sought to be recovered is a "common law cost," we must determine whether the trial court abused its discretion in awarding or denying the cost under N.C. Gen. Stat. § 6-20. *Id.*

In this case, defendants seek recovery for costs related to (1) deposition fees; (2) mediation costs; (3) expert witness fees; and (4) trial exhibit costs. We address each of these in turn.

### A.  Deposition Costs

Deposition costs are not listed as a recoverable cost under N.C. Gen. Stat. § 7A-305(d). However, they have been allowed at common law. *Cunningham v. Riley*, 169 N.C. App. 600, 605, 611 S.E.2d 423, 426 (2005); *Dep't of Transp. v. Mfd. Housing, Inc.*, 160 N.C. App. 461, 586 S.E.2d 780 (2003). We may only overturn the trial court's denial of defendants' deposition costs upon a showing of abuse of discretion. *Id.* Defendants do not argue in their brief that the trial court abused its discretion in refusing to award this item as costs, nor do we discern any abuse of discretion.

MILLER v. FORSYTH MEM'L HOSP., INC.

[173 N.C. App. 385 (2005)]

### B. Mediation Costs

N.C. Gen. Stat. § 7A-38.1 mandates that a mediated settlement conference be held in all civil actions. In this case, the parties participated in mediation with a court-appointed mediator. As a result, defendants' incurred a mediator fee of $350.00. Mediation fees are recoverable under N.C. Gen. Stat. § 7A-305(d)(7), thus the trial court was required to tax this cost against plaintiffs. *Lord*, 164 N.C. App. at 736, 596 S.E.2d at 896 (citing *Sara Lee Corp. v. Carter*, 129 N.C. App. 464, 500 S.E.2d 732 (1998), *rev'd on other grounds*, 351 N.C. 27, 519 S.E.2d 308 (1999)). The trial court erred in failing to assess this item as costs against plaintiffs.

### C. Expert Witness Fees

Pursuant to N.C. Gen. Stat. § 7A-305(d)(1) witness fees are assessable as costs "as provided by law." "This refers to the provisions of N.C. Gen. Stat. § 7A-314 which provides for witness fees where the witness is under subpoena." *Id.* at 735, 596 S.E.2d at 895. The trial judge only has the authority to award witness fees where the witness was under subpoena. *Id.* In this case, none of defendants' expert witnesses were under subpoena. As a result, the trial court could not award defendants' expert witness fees pursuant to N.C. Gen. Stat. § 7A-305(d). *Accord id.* Nor does the authority to tax expert witness fees exist as a "common law" cost under N.C. Gen. Stat. § 6-20. *Id.*

### D. Exhibit Costs

Costs associated with trial exhibits are not listed as a recoverable expense under N.C. Gen. Stat. § 7A-305(d). However, opinions of this Court have, at times, found exhibit costs allowable at common law, *see Coffman v. Roberson*, 153 N.C. App. 618, 629, 571 S.E.2d 255, 262 (2002); *Lewis v. Setty*, 140 N.C. App. 536, 539-40, 537 S.E.2d 505, 507 (2000); *Smith v. Underwood*, 127 N.C. App. 1, 12-13, 487 S.E.2d 807, 814-15 (1997), and at other times, disallowed exhibit costs, see *Charlotte Area*, 160 N.C. App. at 472, 586 S.E.2d at 786. The trial court chose not to allow the request for exhibit costs. Thus, we are unable to say the trial court erred in denying defendants these costs.

We hold that defendants were entitled to recover costs from plaintiffs as provided by law, and should recover from plaintiffs $350.00 for the cost of court ordered mediation. We reverse and remand to the trial court for entry of an order consistent with this opinion.

NO ERROR AS TO TRIAL; AFFIRMED IN PART AND REVERSED AND REMANDED IN PART AS TO COSTS ORDERED.

Judges TIMMONS-GOODSON and McCULLOUGH concur.